IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| FIFTH THIRD BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:20CV00033 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| INTERNATIONAL BUSINESS | ) | By: Hon. Glen E. Conrad |
| MACHINES CORP., | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| EPLUS GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:20CV00035 |
| | ) | |
| INTERNATIONAL BUSINESS | ) | |
| MACHINES CORP., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiffs Fifth Third Bank, N.A., and ePlus Group, Inc., have filed separate causes of action against International Business Machines Corp. ("IBM") for breach of contract and breach of warranty. On July 21, 2020, the court consolidated the cases under Civil Action No. 3:20-cv-00033 pursuant to Federal Rule of Civil Procedure 42(a). (ECF No. 10.) IBM has moved to dismiss both causes of action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The motions have been fully briefed and are ripe for review.

## Background

The following facts are taken from Fifth Third Bank's and ePlus Group's complaints and are construed as true for purposes of this motion. Hall v. DIRECTV, LLC, 846 F.3d 757, 765 (4th

Cir. 2017 ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.").

    a. **The Parties**

The U.S. Department of Veterans Affairs (the "Government") awarded By Light Professional IT Services ("By Light") a prime contract to provide data management services in Culpeper, Virginia (the "Prime Contract"). (Fifth Third Bank compl. ¶ 7; ePlus Group compl. ¶ 7.) The Prime Contract obligated By Light to provide to the Government "NetApp" software, a product that is sold through authorized retailers. (Id.)

After By Light won the Prime Contract with the Government, it subcontracted to Verizon Sourcing, LLC, that obligation to provide the Government with NetApp software and services. (Fifth Third Bank compl. ¶ 8.) Verizon Sourcing was later acquired by IBM. (Id.) This meant that IBM inherited the rights and obligations under the subcontract with By Light and was thus obligated to provide NetApp software to the Government. (Id.)

To fulfill this obligation, IBM turned to ePlus Technology, an authorized NetApp retailer, for a license to use the NetApp software. ePlus Technology first sent IBM and Verizon Sourcing "Quotations." (Fifth Third Bank compl. ¶ 12; ePlus Group compl. ¶¶ 9–10.) Then, IBM later sent ePlus Technology several purchase orders for the software (the "Purchase Orders"). (Fifth Third Bank compl. ¶ 9; ePlus Group compl. ¶ 8.)

Each Purchase Order consisted of a one-year base term with varying numbers of "option years." (Fifth Third Bank compl. ¶ 9; ePlus Group compl. ¶ 8.) The plaintiffs contend that, as an authorized NetApp retailer, ePlus Technology provided a financing deal for IBM by (1) paying up front the full price for a multi-year NetApp software license and (2) then allocating those costs over the life of each contract—including these "option years"—it entered with IBM. The plaintiffs

assert that in exchange for this financing deal, IBM agreed to bear the risk that the Government would either terminate or not renew the Prime Contract with By Light for any reason other than non-appropriation of funding by the Government. (Fifth Third Bank compl. ¶¶ 11, 41; ePlus Group ¶¶ 9, 40.)  That is, IBM would still be on the hook to ePlus Technology for the entirety of the Contracts (including the "option years") even if the Government chose not to renew its Prime Contract with By Light, so long as the Government's stated reason for non-renewal was not that it failed to appropriate the requisite funding.  The plaintiffs further assert that IBM indicated to ePlus Technology that the "software and services would be essential to the Government for the full term."  (Fifth Third Bank compl. ¶ 23; ePlus Group compl. ¶ 21.)   In total, IBM and ePlus Technology entered into five contracts in connection with IBM's subcontract to the Government's Prime Contract with By Light.

The Government, however, eventually chose not to renew the Prime Contract with By Light.  The Government's reason for nonrenewal was neither for failure to appropriate funds nor convenience, the plaintiffs maintain.  (Fifth Third Bank compl. ¶ 38; ePlus Group compl. ¶ 37.)  IBM, a subcontractor to that Prime Contract, subsequently notified ePlus Technology it did not intend to renew the "option years" under its contracts with ePlus Technology.  (Id.)  ePlus Group and Fifth Third Bank—both 2012 assignees of ePlus Technology's rights under those contracts—assert that IBM was still obligated to make payments for those "option years" pursuant to termination charges in the contracts.

### b. The Five Contracts at Issue

Five contracts are at issue in the present matter. The plaintiffs assert that each contract is made up of an IBM Purchase Order and a corresponding ePlus Technology Quotation (together

3

referred to as the "Contracts").[1] For example, the plaintiffs assert that IBM Purchase Order Number 5005225311 and the corresponding ePlus Technology Quotation 22209696 combine to make up the terms of "Contract 311." (Fifth Third Bank compl. ¶ 15.) Contract 311 provided for a base year payment of $477,355, with three additional payments of $477,355 per year. (Id.) The additional payments are referred to as "Option Year Payments" in Contract 311. (Fifth Third Bank compl. Ex. 2 at 8; Ex. 3 at 1.)

Contract 250 (IBM Purchase Order No. 5005119250 and ePlus Technology Quotation 22065719) provided for a base year payment of $331,851.22, with three additional payments of $443,342.04 per year. (Fifth Third Bank compl. ¶ 19.) The additional payments are referred to as "Option Year Payments" in Contract 250. (Fifth Third Bank compl. Ex. 6 at 8; Ex. 7 at 1.)

Contract 543 (IBM Purchase Order No. 5005184543 and ePlus Technology Quotation 22187712) provided for a base year payment of $62,721.22, with two additional payments of $62,721.22 per year. (ePlus Group compl. ¶ 12.) The additional payments are referred to as "Option Year Payments" in Contract 543. (ePlus Group compl. Ex. 1 at 8; Ex. 2 at 1.)

Contract 519 (IBM Purchase Order No. 5005221519 and ePlus Technology Quotation 22220726) provided for a base year payment of $11,296.44, with two additional years of payments of $11,296.44. (ePlus Group compl. ¶ 15.) The additional payments are referred to as "Option Year Payments" in Contract 519. (ePlus Group compl. Ex. 4 at 4; Ex. 5 at 1.)

Finally, Contract 538 (IBM Purchase Order No. 5005221538 and ePlus Technology Quotation 2214913) provided for a base year payment of $124,323.83, with two additional

---

[1] IBM instead asserts that the ePlus Technology Quotations "are not part of the contract and are nothing more than offers that were rejected by IBM's later-in-time Purchase Orders." (ECF Nos. 13 and 15, at 7 n.2.) Because the court "must accept as true all of the factual allegations contained in the complaint[s] and draw all reasonable inferences in favor of the plaintiff[s]," the court will assume at this stage of the pleadings that the ePlus Technology Quotations are part of the Contracts. Hall, 846 F.3d at 765.

payments of $124,323.83 per year. (ePlus Group compl. ¶ 18.) The additional payments are referred to as "Option Year Payments" in Contract 538. (ePlus Group compl. Ex. 7 at 4; Ex. 8 at 1.)

On October 17, 2012, ePlus Technology assigned its rights to payment and enforcement under each contract with IBM to plaintiff ePlus Group. (Fifth Third Bank compl. ¶ 13; ePlus Group compl. ¶ 11.) Next, ePlus Group assigned two of those contracts, Contracts 311 and 250, to MB Financial, which subsequently merged with plaintiff Fifth Third Bank. (Fifth Third Bank compl. ¶ 14.) ePlus Group retained payment and enforcement rights to Contracts 543, 519, and 538. (ePlus Group compl. ¶¶ 12, 15, 18.) Thus, Fifth Third Bank seeks recovery for IBM's alleged breach of Contracts 311 and 250, while ePlus Group seeks recovery for IBM's alleged breach of Contracts 543, 519, and 538.

The plaintiffs contend that in each contract, IBM (1) warranted to ePlus Technology that "the software and services would be essential to the Government for the full term" and (2) "agreed to use its best efforts to cause the Government to appropriate funds for the Option Year Payments in the subsequent Fiscal Years." (Fifth Third Bank compl. ¶¶ 23–24; ePlus Group compl. ¶¶ 21–22.) The plaintiffs also assert that ePlus Technology's terms and conditions alone (and not IBM's) govern each Contract. To this end, the plaintiffs note that each ePlus Technology Quotation includes a provision stating that in placing an order with ePlus Technology, IBM agrees to comply with ePlus Technology's terms and conditions and that "[u]nless there is a separate written agreement signed by both you and ePlus," ePlus Technology's terms and conditions "shall be the only terms and conditions applicable to transactions between you and ePlus [Technology], and no additional or contrary terms referenced in a purchase order, document, or other communication shall apply." (Fifth Third Bank compl. ¶ 25; ePlus Group compl. ¶ 23.) The plaintiffs further note

that the Purchase Orders expressly stipulate that if any terms in the Purchase Orders conflict with terms in the ePlus Technology Quotations, the terms in the ePlus Technology Quotations govern.[2] (Fifth Third Bank compl. ¶ 27; ePlus Group compl. ¶ 25.)

The plaintiffs also allege that each Contract only allowed for termination without further obligation of either party if the Government failed to appropriate sufficient funds to continue the Prime Contract. (Fifth Third Bank compl. ¶ 28; ePlus Group compl. ¶ 26.) Otherwise, pursuant to a "Termination Charge" in each Contract, IBM would be obligated to pay the remaining unpaid payments, including those due for the option years. (Fifth Third Bank compl. ¶¶ 29–32; ePlus Group compl. ¶¶ 27–29.)

### c. IBM's Alleged Breach

The plaintiffs contend that ePlus Technology fully performed on each Contract and IBM failed to make all required payments. Plaintiff Fifth Third Bank asserts that IBM has made the base year payment and payments due for Option Years 1 and 2 for Contracts 311 and 250 but has refused to pay the amounts due for Option Year 3. Specifically, plaintiff Fifth Third Bank alleges that IBM has failed to pay $477,355 due for Option Year 3 to Contract 311 and $443,342.04 due for Option Year 3 to Contract 250. (Fifth Third Bank compl. ¶¶ 34–35.)

As to Contract 543, plaintiff ePlus Group alleges that IBM has made the requisite base year payment and payment for Option Year 1 but has refused to pay the $67,721.22 due for Option Year 2. (ePlus Group compl. ¶ 32.) ePlus Group contends that for Contract 519, IBM still owes $112.96 on its base year payment and owes $11,296.44 for Option Year 2. (Id. ¶ 33.) Finally, as to Contract 538, ePlus Group asserts that IBM owes $1,243.24 on its base year obligation and has refused to make its $124,323.83 payments due for Option Year 1 and Option Year 2. (Id. ¶ 34.)

---

[2] As stated previously, IBM maintains that these Quotations have no legal effect.

The plaintiffs maintain that although IBM emailed ePlus Technology stating that it did not intend to renew for the option years under the Contracts, it failed to provide the required written proof that the termination was due to non-appropriation of funds or termination for convenience by the Government. (Fifth Third Bank compl. ¶ 37; ePlus Group compl. ¶ 36.) Pointing to email correspondence between By Light and IBM, the plaintiffs assert that the Government's decision to not exercise the option renewals was not due to non-appropriation of funds or termination for convenience. (Fifth Third Bank compl. ¶ 38; ePlus Group compl. ¶ 37.)

Instead, the plaintiffs maintain that the Government did not renew simply because it wanted to use a different technology. (Fifth Third Bank compl. ¶ 39; ePlus Group compl. ¶ 38.) The plaintiffs contend that this decision to use different technology "amounts to non-renewal within the meaning of the contracts and thus does not release IBM from its payment obligations under the Contracts." (Fifth Third Bank compl. ¶ 40; ePlus Group compl. ¶ 39.) The plaintiffs alternatively assert that if the Government failed to appropriate funds for additional years under the Contracts, IBM breached the Contracts by failing to use its best efforts to cause the Government to do so. (Fifth Third Bank compl. ¶¶ 40, 58, 83; ePlus Group compl. ¶¶ 51, 72, 95.)

Counts 1, 2, 5, and 6 of Fifth Third Bank's complaint bring breach of contract claims.[3] Counts 3 and 7 bring "alternative" breach of contact claims on the basis of IBM's alleged failure to "use its best efforts to cause the Government to appropriate funds for the additional option years." (Fifth Third Bank compl. ¶¶ 58, 83.) Finally, Counts 4 and 8 to Fifth Third Bank's complaint bring breach of warranty claims.

As for ePlus Group's complaint, Counts 1, 4, and 7 raise breach of contract claims, while Counts 2, 5, and 8 also bring "alternative" breach of contact claims on the basis of IBM's alleged

---

[3] The court notes that Counts 2 and 6 are also styled as "alternative claim[s] for relief."

7

failure to "use its best efforts to cause the Government to appropriate funds for the additional option years." (ePlus Group compl. ¶¶ 51, 72, 95.) Counts 3, 6, and 9 allege breach of warranty.

## Procedural History

The court previously heard arguments on a motion to dismiss in a predecessor case, ePlus Technology, Inc., v. Int'l Bus. Mach. Corp., No. 3:19-cv-00051. In that matter, the court ultimately offered ePlus Technology the opportunity to amend its complaint. ePlus Technology instead chose to voluntarily dismiss pursuant to Federal Rule of Civil Procedure 41. ePlus Group and Fifth Third Bank, both assignees of ePlus Technology's rights to the contracts at issue, have filed the present causes of action. IBM has moved to dismiss both matters for failure to state a claim. On November 5, 2020, the court held a telephonic hearing on the motions.

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

**Discussion**

In its motions to dismiss, IBM contends that the plaintiffs' claims all "fail at the threshold because both purchase orders incorporate an anti-assignment provision," meaning that the plaintiffs lack standing to bring their claims. (ECF Nos. 13 and 15 at 2.) But even if the plaintiffs have standing, their breach of contract and breach of warranty claims cannot withstand scrutiny under Rule 12(b)(6), IBM argues. (Id.) For the following reasons, the court will grant IBM's motion as to the plaintiffs' claims for (1) breach of "best efforts" obligations and (2) breach of warranty but will deny the motion as to all other claims.

**I.    STANDING**

As a preliminary matter, IBM argues that due to an anti-assignment provision in its terms and conditions, the plaintiffs are not proper assignees of the Contracts and thus lack standing to bring their claims. Per IBM, each Purchase Order incorporates IBM's standard terms and conditions, which expressly bar assignments without IBM's written consent. IBM thus argues that because ePlus Technology never received IBM's written consent, the assignments were void, and the plaintiffs have no rights under the Contracts and no standing to proceed.

The plaintiffs, on the other hand, point to a clause in the ePlus Technology Quotations stipulating that IBM agrees to comply with the ePlus Technology terms and conditions, which "shall be the only terms and conditions applicable to transactions between [IBM] and ePlus [Technology], and no additional or contrary terms referenced in a purchase order, document, or other electronic communication shall apply." (ECF Nos. 20 and 21 at 8.) And pursuant to the ePlus Technology terms and conditions, "ePlus [Technology] may, without notice to [IBM], assign its rights to receive payments hereunder to a third party assignee (the "Assignee"), in which case the Assignee will have all of ePlus [Technology]'s rights but none of its obligations." (ECF Nos.

9

20-1 and 21-1 at 7.) Finally, the plaintiffs note that the Purchase Orders contain clauses stipulating that "[a]ny conflicts between any purchase order issued by IBM (and any term or contract referenced therein) and the terms of this ePlus Technology, Inc, Quotation . . . shall be governed by the terms of [the] ePlus Technology, Inc., Quotation." (Id. at 9.)

In light of the language the plaintiffs highlight, the court concludes that the plaintiffs have standing to bring their claims. Here, the assignment provisions in IBM's terms and conditions and ePlus Technology's terms and conditions directly conflict. However, as the plaintiffs note, the Purchase Orders stipulate that the terms of the ePlus Technology Quotations shall control in the event that the two documents conflict. Moreover, the court notes that the ePlus Technology Quotations also contain the same language. (See Fifth Third Bank compl. Ex. 3 at 2, Ex. 7 at 2; ePlus Group compl. Ex. 2 at 2, Ex. 5 at 2, Ex. 8 at 2.) Given that the ePlus Technology Quotations only reference the ePlus Technology terms and conditions, the court concludes that the ePlus Technology terms and conditions govern. The anti-assignment provision in the IBM terms and conditions is thus inapplicable, and the plaintiffs have standing to bring their claims.

## II. BREACH OF CONTRACT

IBM offers several independent rationales for why the plaintiffs' breach of contract claims should not survive Rule 12(b)(6) scrutiny. IBM first argues that the court must dismiss the plaintiffs' breach of contracts claims because they seek to enforce impermissible penalties. But even if the court does not rule in its favor on the penalties issue, various terms in the Contracts bar the claims, IBM asserts. Finally, IBM moves to dismiss the plaintiffs' alternative claims for breach of contract due to IBM's failure "to use its best efforts to cause the Government to appropriate funds for the additional option years." (Fifth Third Bank Compl. ¶¶ 58, 83; ePlus Group Compl. ¶¶ 51, 72, 95.) The court will address each argument in turn.

a.  **Unenforceable Penalties**

Virginia[4] law allows for contracting parties to stipulate in advance to liquidated damages "[w]hen the actual damages contemplated at the time of the agreement are uncertain and difficult to determine with exactness and when the amount fixed is not out of all proportion to the probable loss . . . ." Taylor v. Sanders, 353 S.E.2d 745, 746–47 (Va. 1987). However, a liquidated damages clause constitutes an unenforceable penalty "when the damage resulting from a breach of contract is susceptible of definite measurement, or where the stipulated amount would be grossly in excess of actual damages." O'Brian v. Langley School, 507 S.E.2d 363, 365 (Va. 1998) (quoting Brooks v. Bankson, 445 S.E.2d 473, 479 (Va. 1994)).

"To determine whether a stipulated amount is liquidated damages or an unenforceable penalty, the court must examine 'the intent of the parties as evidenced by the entire contract viewed in light of the circumstances under which the contract was made.'" ACL Realty Corp. v. .Com Properties, LLC, No. 7:07CV00124, 2007 WL *1577511, at *2 (W.D. Va. May 30, 2007) (Conrad, J.) (quoting Taylor v. Sanders, 353 S.E.2d 745, 747 (Va. 1987)). The party challenging the clause's enforceability bears the burden of proof, and "is entitled to conduct discovery and present relevant evidence that the damages resulting from breach of the contract are susceptible of definite measurement or that the stipulated damages are grossly in excess of the actual damages suffered by the nonbreaching party." O'Brian, 507 S.E.2d at 365.

Here, the plaintiffs argue, inter alia, that whether a contractual clause constitutes an unenforceable penalty may not be determined at the Rule 12(b)(6) motion to dismiss stage. IBM instead contends that the issue presents a question of law that the court can decide on a motion to

---

[4] The parties agree that New York and Virginia law are in accord with respect to the grounds for IBM's motions. (See ECF No. 13 at 6 n.2; ECF No. 15 at 6 n.2.; ECF No. 20 at 10 n.2; ECF No. 21 at 10 n.4.). Where two bodies of law do not differ materially, courts apply the law of the forum in which they sit. Perini/Tompkins Jt. Venture v. Ace Am. Ins. Co., 738 F.3d 95, 101 (4th Cir. 2013). The court will therefore apply Virginia law.

dismiss. As stated previously, the Virginia Supreme Court has advised that courts must look to "the intent of the parties as evidenced by the entire contract viewed in light of the circumstances under which the contract was made." Taylor, 353 S.E.2d at 747. Moreover, the party challenging the clause "is entitled to conduct discovery and present relevant evidence" concerning its alleged unenforceability. O'Brian, 507 S.E.2d at 365.

The court therefore agrees that it would be premature to decide at this stage whether the plaintiffs' breach of contract claims are barred on the basis of unenforceable penalties. Discovery has yet to commence, and there is simply insufficient evidence to adequately demonstrate the contracting parties' intent. See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. DCI Signs & Awnings, Inc., No. 1:08cv15, 2008 WL 4329294, at *7 (E.D. Va. Sept. 15, 2008) (denying defendant's motion for summary judgment after concluding "that there are insufficient facts to determine whether the [contractual clause] is a liquidated damages clause, a penalty, or something else entirely"); see also Qb Invs. N. Am. v. Suntrust Banks, No. 1:16-CV-1484-MHC, 2016 U.S. Dist. LEXIS 201244, at *11–12 (N.D. Ga. Nov. 28, 2016) (noting that under Georgia law, whether a contractual clause constitutes an unenforceable penalty "would not be properly resolved by a motion to dismiss"); Shree Ganesh, Inc. v. Days Inns of Am., Inc. No. 3:99CV7483, 2000 U.S. Dist. LEXIS 22004, at *6–7 (N.D. Ohio Mar. 28, 200) (noting that under Ohio law, "[w]hether a given liquidated damages provision constitutes an unenforceable penalty clause . . . is not properly disposed of on a motion to dismiss"). The court will therefore refrain at this stage from ruling on whether the plaintiffs' breach of contract claims seek to enforce impermissible penalties.

  b. **The Contractual Terms**

Next, IBM asserts that even if the breach of contract claims are not barred on the basis of unenforceable penalties, the claims fail due to the terms of the Contracts themselves. On this front,

IBM points to two provisions in the Purchase Orders. First, IBM cites a provision in each Purchase Order stipulating that "[t]he IBM maximum limitation of liability for incurred costs under this Purchase Order is the funded value of the Purchase Order" and barring ePlus Technology from "incur[ring] any cost, obligations or liabilities of any nature whatsoever over this amount." (ECF Nos. 13 and 15 at 13.) (quoting Fifth Third Bank Compl. Ex. 2 at 10–11, Ex. 6 at 12; ePlus Group Compl. Ex. 1 at 11, Ex. 4 at 11, Ex. 7 at 11.) The Purchase Orders further note that "and any such additional obligations or liabilities incurred or assumed by [ePlus Technology] are at [ePlus Technology's] own risk and account," and that "IBM shall not be liable in any manner to pay or reimburse [ePlus Technology] for such." (Id.) Per IBM, each breach of contract claim "seeks amounts in excess of the funded value of the Purchase Orders," meaning that IBM is not liable. (Id.)

Next, IBM contends that "each Purchase Order contains a clear provision that allows IBM to terminate without cause at any time, and IBM is obligated to pay only ePlus [Technology]'s actual expenses for work completed prior to termination." (ECF Nos. 13 and 15 at 15.) To this end, IBM again notes that each Purchase Order incorporates IBM's terms and conditions, which expressly stipulate both that (1) the Purchase Orders "may be terminated by [IBM] with or without cause" and (2) if IBM terminates without cause, IBM will only pay ePlus [Technology] for ePlus [Technology]'s "actual and reasonable expenses for work that has been satisfactorily completed as of the date of termination, but in no event will such payment exceed the agreed upon prices." (Id.) IBM thus asserts it had the right to terminate the Purchase Orders without cause and that it was only obligated to pay for actual and reasonable expenses for work up to the termination date, which it did. (Id.)

13

The plaintiffs instead argue that the contractual provisions IBM cites to are "unavailing" and "deal only with any claims ePlus Technology might make for reimbursement for costs and expenses separate and apart from a claim for the specified amounts IBM owes under the Contracts." (ECF Nos. 20 and 21 at 13, 14.)  Indeed, the Contracts each provide "that unless the Government terminated the prime contract because the Government failed to appropriate funds, IBM is obligated to pay the remaining unpaid payments under the Contracts, including the option renewals or a sum equivalent to the same," the plaintiffs assert. (Id. at 12.)

In Virginia, courts follow the "plain meaning" rule to contract interpretation. Appalachian Power Co. v. Greater Lynchburg Transit Co., 374 S.E.2d 10, 12 (Va. 1988).  To this end, "when considering the meaning of any part of a contract, [the court] will construe the contract as a whole, striving not to place emphasis on isolated terms wrenched from the larger contractual context. Babcock & Wilcox Co. v. Areva NP, Inc., 788 S.E. 2d 237, 244 (Va. 2016) (internal quotation marks and citations omitted).  "The court must give effect to all of the language of a contract if its parts can be read together without conflict." Berry v. Klinger, 300 S.E.2d 792, 796 (Va. 1983). Finally, "the court will not treat any word or clause as meaningless if any reasonable interpretation consistent with the other portions of the contract can be ascribed to it." First Am. Bank of Va. v. J.S.C. Concrete Const., Inc., 523 S.E.2d 496, 501 (Va. 2000).

In the instant matter, each Purchase Order provides for a "Termination Charge" to apply should the Government choose to exercise its right to terminate for convenience. (ECF Nos. 13-2 at 5; 13-3 at 5; 15-2 at 5; 15-3 at 3; and 15-4 at 3.)  Similarly, "in the event the IBM order is non-renewed, terminated or otherwise discontinued prior to the Software being fully implemented, installed and in use by the Government, such non-renewal, termination or discontinuance shall subject to the Termination Charge." (Id.)  The "Termination Charge" provided for "shall be equal

14

to the sum of the remaining unpaid payments for the remainder of the term, including option renewals." (Id.) The Quotations also provide for a "Termination Charge . . . equal to the sum of the remaining unpaid payments for the remainder of the term, including option renewals." (Fifth Third Bank compl. Ex. 3 at 2, Ex. 7 at 2; ePlus Group compl. Ex. 2 at 2, Ex. 5 at 2, Ex. 8 at 2.)

In light of this contractual language, the court cannot agree with IBM's proffered interpretations. And given that each Purchase Order and Quotation provides that "[a]ny conflicts between any purchase order issued by IBM (and any term or contract referenced therein) and the terms of this ePlus Technology, Inc, Quotation . . . shall be governed by the terms of [the] ePlus Technology, Inc., Quotation," IBM's argument concerning its own terms and conditions is inapposite. Simply put, the court cannot at this stage conclude that the Contracts' terms bar the plaintiffs' breach of contract claims.

### c. "Best Efforts"

Lastly, IBM argues that the plaintiffs' allegations that IBM "failed to use its best efforts to cause the Government to appropriate funds for the additional option years" are conclusory and cannot withstand the motion to dismiss. (ECF Nos. 13 and 15 at 14) (quoting Fifth Third Bank compl. ¶¶ 51, 72, 95; ePlus Group compl. ¶¶ 58, 83.) IBM asserts that both complaints are "devoid of any factual allegations to support these claims." (ECF Nos. 22 and 23 at 14.) The plaintiffs instead argue that because they have "pleaded alternative claims for relief as expressly permitted by Rule 8(d), [their] claims . . . should be afforded the opportunity to be borne out by the evidence in this litigation." (ECF No. 20 at 26–27; ECF No. 21 at 26.)

The court concludes that the plaintiffs have not alleged sufficient facts to state a claim for relief. In addition to maintaining that IBM agreed it would "use its best efforts to cause the Government to appropriate funds for the Option Year Payments in the subsequent Fiscal Years,"

15

the complaints allege only that (1) "IBM failed to use its best efforts to cause the Government to do so in breach of the Contracts" and (2) "[b]ecause IBM did not use its best efforts to cause the Government to appropriate funds for the additional option years, the Government did not appropriate such funds nor did IBM receive them and [the Contracts] [were] terminated for non-appropriation." (Fifth Third Bank compl. ¶¶ 57–59, 82–84; ePlus Group compl. ¶¶ 50–52, 71–73, 94–96.) Such conclusory allegations are not sufficient to state a claim, and the court will accordingly dismiss Counts 3 and 7 of Fifth Third Bank's complaint and Counts 2, 5, and 8 of ePlus Group's complaint.

### III. BREACH OF WARRANTY

Finally, IBM contends that the plaintiffs' breach of warranty claims cannot survive the motion to dismiss. Each Purchase Order stipulates that "IBM represents that the software and services . . . will be essential to the Government for the full term." The plaintiffs allege that when the Government did not renew its license, IBM necessarily breached that warranty.

IBM argues that the breach of warranty claims "are based entirely on the Government's decision [to] not renew for option years after the term ended," and notes that even the plaintiffs describe each Purchase Order as having a "one-year base term" with "three option years." (ECF Nos. 13 and 15 at 16.) Per IBM there is a clear distinction between the "one-year base term" and "option years," and because the warranty in the Purchase Orders "does not specify that the renewal or option years are included, it is clear they are not included, and the warranty applies only to the base year." (Id.) IBM thus maintains that because neither the Prime Contract nor Purchase Orders were terminated before the base term ended, IBM fulfilled the warranties and the claims must be dismissed. (Id.)

The plaintiffs, on the other hand, assert that the "full term" of each Contract encompasses both the base year and the option years. (ECF Nos. 20 and 21 at 27.) Because (1) IBM warranted in each Contract "that the software and services . . . will be essential to the Government for the full term," and (2) the complaints alleged that "as evidenced by the Government's nonrenewal, the warranties were breached, as the [NetApp software] plainly was not essential for the full term," the plaintiffs stated claims for breach of warranty. (Id.) To the extent "full term" is ambiguous, its meaning cannot properly be determined on a motion to dismiss, the plaintiffs contend.

Under Virginia contract law, whether a contract is ambiguous is an issue of law for the court to determine. Pocahontas Min. Ltd. Liability Co v. CNX Gas Co., LLC, 666 S.E.2d 527, 530 (Va. 2008). A contract is ambiguous "when the contract's language is of doubtful import, is susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time." Id. "Ambiguity is created by the doubleness of meaning of an expression used in a written instrument." Galloway Corp v. S.B. Ballad Const. Co., 464 S.E.2d 349, 354 (Va. 1995) (internal quotation marks, citation, and alterations omitted). However, "[t]he mere fact that terms of a contract are in dispute is not evidence that the language is not clear and explicit and requires extrinsic evidence to aid in its construction." Id.

In the present matter, the Purchase Orders reference the word "term" (for purposes of temporality) in three separate instances. First, as stated previously, the Purchase Orders stipulate that "IBM represents that the software and services . . . will be essential to the Government for the full term." (ECF Nos. 13-2 at 5; 13-3 at 5; 15-2 at 5; 15-3 at 3; and 15-4 at 3.) Next, the Purchase Orders state that "IBM agrees not to replace the Product with functionally similar Product . . . during the total specified contract term, including optional renewals after such termination or non-renewal . . . ." (Id.) Finally, the Purchase Orders dictate that should the Government terminate for

17

convenience, "the Termination Charge shall be equal to the sum of the remaining unpaid payments for the remainder of the term, including option renewals." (Id.) The Quotations contain the same language. (See Fifth Third Bank compl. Ex. 3 at 2, Ex. 7 at 2; ePlus Group compl. Ex. 2 at 2, Ex. 5 at 2, Ex. 8 at 2.)

The court notes that in the above-referenced language, the Purchase Orders explicitly state when IBM's obligation is to extend to "option renewals." Therefore, the court concludes that "term" unambiguously refers only to the Contracts' base years and not the option years. To conclude otherwise would render the phrases "including optional renewals" and "including option renewals" to be mere surplusages. Indeed, if the "full term" readily encompassed option years, it would be unnecessary to separately reference both "term" and "option renewals." See TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 557 S.E.2d 199, 200 (Va. 2002) ("[N]o no word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it, and parties are presumed not to have included needless words in the contract."); J.S.C. Concrete Const., Inc., 523 S.E.2d at 501 ("[T] the court will not treat any word or clause as meaningless if any reasonable interpretation consistent with the other portions of the contract can be ascribed to it."); Berry v. Klinger, 300 S.E.2d 792, 796 (Va. 1983) ("The court must give effect to all of the language of a contract if its parts can be read together without conflict.").

Having concluded that the "full term" unambiguously encompasses only the base year for each Contract, the court necessarily also concludes that the plaintiffs have failed to state a claim for breach of warranty. The complaints do not allege that the Government did not renew its license during the base year. Therefore, the plaintiffs have not alleged a plausible claim for breach of warranty, and the court will dismiss Counts 4 and 8 of Fifth Third Bank's Complaint and Counts 3, 6, and 9 of ePlus Group's Complaint without prejudice.

**Conclusion**

For the reasons stated, IBM's motions to dismiss are **GRANTED IN PART** and **DENIED IN PART**. The court will dismiss without prejudice Counts 3, 4, 7, and 8 of Fifth Third Bank's Complaint and Counts 2, 3, 5, 6, 8, and 9 of ePlus Group's Complaint.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 11th day of February, 2021.

_____
Senior United States District Judge