IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| FIFTH THIRD BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:20cv00033 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| INTERNATIONAL BUSINESS | ) | By: Hon. Thomas T. Cullen |
| MACHINES CORP., | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| EPLUS GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:20cv00035 |
| | ) | |
| INTERNATIONAL BUSINESS | ) | |
| MACHINES CORP., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant IBM's motion for reconsideration of the court's February 11, 2021 order granting in part and denying in part IBM's motions to dismiss for failure to state a claim. In its motion for reconsideration, IBM again argues that the Plaintiffs lack standing to pursue their claims. For the following reasons, the court will deny the motion.

## Background

Plaintiffs Fifth Third Bank, N.A., and ePlus Group, Inc., filed separate causes of action against IBM for breach of contract and breach of warranty. On July 21, 2020, the Honorable

Glen E. Conrad, Senior United States District Judge, consolidated the cases under Civil Action No. 3:20-cv-00033 pursuant to Federal Rule of Civil Procedure 42(a). (ECF No. 10.) IBM moved to dismiss both cases for failure to state a claim on August 7, 2020, arguing that an anti-assignment provision in its Terms and Conditions rendered the purported assignments from ePlus Technology void and that the Plaintiffs therefore lack standing.

On February 11, 2021, Judge Conrad issued a memorandum opinion granting in part and denying in part the motion to dismiss. (ECF No. 35.) The court found IBM's anti-assignment provision inapplicable and concluded that the Plaintiffs have standing. (*See* Mem. Op. 9, ECF No. 35.) IBM has now moved for reconsideration of Judge Conrad's ruling that the Plaintiffs have standing.

After being transferred the case on May 11, 2021, the court held a hearing on the motion on June 16, 2021. The court then directed the parties to submit supplemental briefing on whether and how the Uniform Commercial Code (the "UCC") applies to the contracts at issue in this case. (ECF No. 49.) The parties have submitted their supplemental briefs and the matter is ripe for decision.

## Standard of Review

The court retains jurisdiction "to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) (citing *Fayetteville Inv. v. Com. Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991)). This authority to address a motion for reconsideration remains "committed to the discretion of the district court." *Id.* at 515 (citing *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)). Given this discretion, "[m]otions for reconsideration

of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Id.* at 514. Such motions are typically denied, however, unless either "a controlling or significant change in the law or facts since the submission of the issue to the Court has occurred" or the court has (1) "patently misunderstood a party," (2) "made a decision outside the adversarial issues presented to the Court by the parties," or (3) "made an error not of reasoning but of apprehension." *Nautilus Ins. Co. v. Strongwell Corp.*, 968 F. Supp. 2d 807, 823 (W.D. Va. 2014) (quoting *McAfee v. Boczar*, No. 3:11CV646, 2012 WL 2505263, at *2, 2012 U.S. Dist. LEXIS 90216, at *5 (E.D. Va. June 28, 2012)). "Reconsideration is also appropriate when the prior decision was clearly erroneous and would work manifest injustice." *Id.* (internal quotation marks and citation omitted).

Ultimately, the court's responsibility "is to reach the correct judgment under law." *Am. Canoe Ass'n*, 326 F.3d at 515. And although this responsibility "may be tempered at times by concerns of finality and judicial economy, nowhere is it greater and more unflagging than in the context of subject matter jurisdiction issues, which call into question the very legitimacy of a court's adjudicatory authority." *Id.* Moreover, "Article III standing in particular . . . represents 'perhaps the most important' of all jurisdictional requirements.'" *Id.* (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). The Fourth Circuit has accordingly ruled that "a district court's otherwise broad discretion to reconsider interlocutory orders is narrowed in the context of motions to reconsider issues going to the court's Article III subject matter jurisdiction." *Id.*

**Discussion**

At the heart of the motion for reconsideration is a dispute over which terms actually comprise the contracts at issue and the legal framework that governs them. The Plaintiffs argue that the ePlus Technology Quotations were offers that IBM conditionally accepted with its Purchase Orders, while IBM instead asserts that the Purchase Orders themselves were offers that ePlus Technology accepted by performing. Moreover, the Plaintiffs argue that Virginia law governs the contracts and IBM contends that New York law controls. For the following reasons, the court concludes that the contracts are ambiguous and that dismissal at this stage would therefore be premature.

In diversity actions, federal courts must apply the choice of law rules of the states in which they sit. *Klaxon v. Stentor Elec. Mfg. Elec. Co., Inc.*, 313 U.S. 487, 494, 496 (1941). And in Virginia, "[i]t is a general rule that every contract as to its validity, nature, interpretation, and effect is governed by the law of the place where it is made, unless it is to be performed in another state." *Erie Ins. Exch. v. Shapiro*, 450 S.E.2d 144, 145 (Va. 1994) (cleaned up). Because the contracts required ePlus Technology to license software and install it in Culpeper, Virginia, the court will apply Virginia law in determining the contracts' "validity, nature, interpretation and effect . . . ." *Id.*

Whether a contract is ambiguous is an issue of law, and "[a] court's primary focus in considering disputed contractual language is to determine the parties' intention, which should be ascertained, whenever possible, from the language the parties employed in their agreement." *Pocahontas Min. Ltd. Liability Co. v. CNX Gas Co., LLC*, 666 S.E.2d 527, 530, 531 (Va. 2008). A contract is ambiguous "when the contact's language is of doubtful import, is

susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time." *Id.* at 531. "No word or phrase employed in a contract will be treated as meaningless if a reasonable meaning can be assigned to it, and there is a presumption that the contracting parties have not used words needlessly." *Id.* Finally, in determining the parties' intentions concerning certain contractual provisions, the court looks to the document as a whole. *Id.*

The putative elements of the contracts—the ePlus Technology Quotations and IBM Purchase Orders—contradict each other in three material respects. First, each ePlus Technology Quotation contains a clause requiring IBM to comply with the ePlus Technology Terms and Conditions (the "ePlus Terms"), while each Purchase Order contains a clause rendering ePlus Technology subject to the IBM Standard Terms and Conditions (the "IBM Terms"). (Case No. 3:20-cv-33, ECF No. 1-4 at 2, 1-8 at 3, 13-2 at 1, 13-3 at 1, 15-2 at 1, 15-3 at 1, 15-4 at 1; Case No. 3:20-cv-35, ECF No. 1-3 at 3, 1-6 at 3, 1-9 at 3.) Specifically, the ePlus Technology Quotations stipulate as follows:

> By placing an order with ePlus for products or services you agree to comply with the [ePlus Terms] . . . . Unless there is a separate written agreement signed on behalf of both you and ePlus by a duly authorized officer, the [ePlus Terms] shall be the only terms and conditions applicable to transactions between you and ePlus [Technology], and no additional or contrary terms referenced in a purchase order, document, or other communication shall apply.

(Case No. 3:20-cv-33, ECF No. 1-4 at 2, 1-8 at 3; Case No. 3:20-cv-35, ECF No. 1-3 at 3, 1-6 at 3, 1-9 at 3.) The Purchase Orders similarly provide that "[b]y filling this purchase order, you are subject to the [IBM Terms]. . . . If you . . . disagree with any of the [IBM Terms], please contact your IBM buyer prior to fulfilling this purchase order." (Case No. 3:20-cv-33, ECF

5

No. 13-2 at 1, 13-3 at 1, 15-2 at 1, 15-3 at 1, 15-4 at 1.)  Second, the ePlus Terms contain a choice of law provision setting Virginia as the governing jurisdiction, while the IBM Terms instead contain a New York choice of law clause.  (Case No. 3:20-cv-33, ECF No. 13-4 at 5, 20-1 at 5.)  Finally, the IBM Terms include an anti-assignment clause, and the ePlus Terms contain no such provision. (Case No. 3:20-cv-33, ECF No. 13-4 at 4, 20-1.)

Additionally, each ePlus Technology Quotation and each Purchase Order contains what the Plaintiffs deem an "order of precedence" provision stipulating that that "[a]ny conflicts between any purchase order issued by IBM (and any term or contract referenced therein) and the terms of this ePlus Technology, inc. Quotation # . . . shall be governed by the terms of this ePlus Technology, inc. Quotation #. . . ."  (Case No. 3:20-cv-33, ECF No. 1-4 at 2, 1-8 at 2, 13-2 at 6, 13-3 at 5, 15-2 at 6, 15-3 at 3, 15-4 at 4; Case No. 3:20-cv-35, ECF No. 1-3 at 2, 1-6 at 2, 1-9 at 2.)  In fact, the Purchase Orders incorporate almost verbatim the entire "General Terms and Conditions" and "Supplemental Terms and Conditions" sections found in each corresponding Quotation.  (Case No. 3:20-cv-33, ECF No. 13-2 at 6, 13-3 at 5, 15-2 at 6, 15-3 at 3, 15-4 at 4.)

At first glance, then, it would appear that (1) the Quotations and Purchase Orders conflict as to which party's Terms govern and (2) the ePlus Terms accordingly control due under the order of precedence provisions.  However, it is not clear whether the "terms of this ePlus Technology, inc. Quotation" constitute the entire ePlus Technology Quotation at large or only the "General Terms and Conditions" and "Supplemental Terms and Conditions" actually incorporated verbatim into the Purchase Orders.  While those provisions were

apparently copied into the Purchase Orders, the provision requiring that IBM comply with the ePlus Terms does not appear in the Purchase Orders.

Moreover, while ePlus Technology issued five Quotations to IBM, Quotations 22065719 and 22209696 are the only two Quotations that are actually referenced in the five Purchase Orders' order of precedence provisions. Purchase Orders 5005119250 and 500518543 both stipulate that "[a]ny conflicts between any purchase order issued by IBM (and any term or contract referenced therein) and the terms of this ePlus Technology, inc. Quotation # 22065719 shall be governed by the terms of ePlus Technology, inc. Quotation #22065719." (Case No. 3:20-cv-33, ECF No. 13-2 at 6, 15-2 at 6.) The remaining Purchase Orders—Purchase Orders 5005225311, 5005221519, and 5005221538—each state that "[a]ny conflicts between any purchase order issued by IBM (and any term or contract referenced therein) and the terms of this ePlus Technology, inc. Quotation # 22209696 shall be governed by the terms of ePlus Technology, inc. Quotation #22209696." (Case No. 3:20-cv-33, ECF No. 13-3 at 5, 15-3 at 3, 15-4 at 4.) Although no order of precedence provision in the Purchase Orders references Quotations 22187712, 22220726, or 22214913, Purchase Orders 5005184543, 5005221519, and 5005221538 still note that their "pricing information . . . derives from" Quotations 22187712, 22220726, and 22214913, respectively. (Case No. 3:20-cv-33, ECF No. 15-2 at 1, 15-3 at 1, 15-4 at 1.) Purchase Orders 5005119250 and 5005225311 similarly note that their "pricing information . . . derives from" Quotations 22065719 and 22209696, respectively. (Case No. 3:20-cv-33, ECF No. 13-2 at 1, 13-3 at 1.) The court is unable to determine the precise root of these discrepancies.

7

This analysis is further complicated by the fact that the order of precedence provisions in the Purchase Orders are reflexive, with each referring to "*this* ePlus Technology, inc. Quotation." (Case No. 3:20-cv-33, 13-2 at 6, 13-3 at 5, 15-2 at 6, 15-3 at 3, 15-4 at 4) (emphasis added.) This presents an interpretive dilemma: the court could either (1) give meaning to the reflexive words and read the Purchase Orders to only incorporate the terms of the Quotations that are expressly included in the Purchase Orders or (2) give meaning to the reference to an ePlus Technology Quotation and hold that all of the Quotations' terms are incorporated into the Purchase Orders. The contextual language does not give any clues as to which reading aligns with the parties' respective intents. The General Terms and Conditions section does state that the "order is subject to the terms and conditions of this Payment Plan," although it is not clear whether those "terms and conditions" are the ePlus Terms or an entirely different set of provisions. (Case No. 3:20-cv-33, ECF No. 13-2 at 6, 13-3 at 5, 15-2 at 6, 15-3 at 3, 15-4 at 4.)

Furthermore, even if the meaning of the order of precedence clauses could be easily ascertained, their application to this particular dispute is uncertain. The conflicting provisions dispositive to the present matter—those concerning choice of law and assignability of claims—are not found in the Quotations or Purchase Orders. Instead, they are found in the ePlus Terms and the IBM Terms, which are incorporated by reference into the Quotations and Purchase Orders. Because the conflicting language is found in the parties' Terms—which are not expressly contained in the Purchase Orders or Quotations—it is not clear that the conflict is "between any purchase order issued by IBM . . . and the terms of this ePlus Technology, Inc, Quotation." In other words, even if the order of precedence clauses give

8

precedence to the Quotations over the Purchase Orders, it is not clear whether they give the ePlus Terms precedence over the IBM Terms.

To make matters even worse, each ePlus Technology Quotation states that it is only "a solicitation for an offer and is subject to credit approval. No contract is formed unless a purchase order or other offer is received and accepted by our office." (Case No. 3:20-cv-33, ECF No. 1-4 at 2, 1-8 at 3; Case No. 3:20-cv-35, ECF No. 1-3 at 3, 1-6 at 3, 1-9 at 3.) This is consistent with general principles of contract law, which hold that, "[t]ypically, a seller's price quotation is an invitation for an offer, and the offer usually takes the form of a purchase order, providing product choice, quantity, price, and terms of delivery." *Audio Visual Assocs., Inc. v. Sharp Elec. Corp.*, 210 F.3d 254, 259 (4th Cir. 2000); *see also J.B. Moore Elec Contractor, Inc. v. Westinghouse Elec Supply Co.*, 273 S.E.2d 553, 556 (Va. 1981) (noting that under Virginia law, "[a]s a general rule, the submission of a purchase order by a prospective buyer is viewed as an offer which may then be accepted or rejected by the seller"). Ultimately, however, "the determination of whether an offer inviting acceptance has been made is controlled by the expressed intention of the offeror." *Kraft Foods N. Am., Inc. v. Banner Engineering Sales, Inc.*, 446 F. Supp. 2d 551, 569 (E.D. Va. 2006) (quoting *J.B. Moore*, 273 S.E.2d at 556).

If the ePlus Technology Quotations were not offers, but instead merely "solicitation[s] . . . for offer[s]," it is not clear why the Purchase Orders would stipulate that any conflicts with the Quotations are to be resolved in favor of the Quotations. Indeed, even if IBM's Purchase Orders were offers that ePlus Technology accepted by performing and "[t]he terms and conditions in [ePlus Technology's] quotation[s] were merely proposed terms and conditions,"

9

*Kraft Foods*, 446 F. Supp. 2d at 569, IBM's own offers still seem to defer to those allegedly rejected terms.

The court is therefore constrained to find the contracts "susceptible of being understood in more than one way or of having more than one meaning." *CNX Gas*, 666 S.E.2d at 531. A court could reasonably conclude either that the order of precedence provisions apply only to the language from the Quotations expressly included in the Purchase Orders, or instead that the provisions encompass the entire Quotation, including the clause stipulating that IBM comply with the ePlus Terms. And, if a court concluded that the provisions encompass the entire Quotation, it could reasonably find either that the order of precedence provisions resolve the conflicts between each party's Terms, or that they do not. Parol evidence is therefore necessary to provide context on the effect of the order of precedence provisions and the parties' intentions in incorporating almost verbatim the Quotations' General and Supplemental Terms and Conditions into the Purchase Orders despite the Quotations' own language that they are not offers. *See, e.g., Eure v. Norfolk Shipbuilding and Drydock Corp., Inc.*, 561 S.E.2d 663, 667–68 (Va. 2002) ("[W]hen a contract is ambiguous, the Court will look to parol evidence in order to determine the intent of the parties."); *Aetna Cas. and Sur. Co. v. Fireguard Corp.*, 455 S.E2d 229, 232 (Va. 1995) ("[When a contract is ambiguous . . . a court should resort to parol evidence to ascertain the true intention of the parties."). Parol evidence is also needed to explain the discrepancies present in the order of precedent provisions.

In sum, the court cannot conclude as a matter of law that the anti-assignment provision in the IBM Terms controls the contracts at issue and that the Plaintiffs therefore lack standing.

The contracts are ambiguous, and dismissal at this stage would be premature. The court will accordingly deny the motion for reconsideration.

## Conclusion

For the reasons stated, the motion for reconsideration (ECF No. 37) is **DENIED**.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 3rd day of August, 2021.

> */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE